# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                    Case No.  3:05-cr-108-J-32MMH

LOVARNSO A. WALKER
    a/k/a Scoot
_____/

## REPORT AND RECOMMENDATION[1]

This cause is before the Court on Defendant's Amended First Motion to Suppress
Results of Illegal Seizure and Search on July 30, 2004 (Dkt. No. 21; Motion to Suppress),
which was filed on May 27, 2005.  The government opposes the Motion to Suppress.  See
United States' Response in Opposition to Defendant's Amended First Motion to Suppress
Results of Illegal Seizure and Search on July 30, 2004 (Dkt. No. 26; Opposition), filed on
June 16, 2005.

---

[1]       Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and
Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days
after service of this document.  Failure to file timely objections shall bar the party from a de novo
determination by a district judge and from attacking factual findings on appeal.

## I.      Evidence and Testimony

The undersigned held an evidentiary hearing on June 17, 2005.  <u>See</u> Transcript of

Motion to Suppress Proceedings (Dkt. No. 32; Tr.).  Two witnesses testified at the hearing:

Detective Christopher Middleton[2] and Defendant Lovarnso Walker.[3]   <u>See id.</u> at 10, 13.

On July 30, 2004, Detective Middleton was working at his desk when he received

a telephone call around 1:30 p.m. from a confidential informant (CI).  <u>See id.</u> at 14, 25.  The

CI told him that

> Lovarnso Walker was traveling to the Palatka area in a green dual-wheel
> truck[,] . . . there was no one else in the vehicle with him[,] and that he was
> planning to travel to the McDonald's located in Palatka which is located off
> Reed . . . Street, also known as Highway 17 to meet with another black male
> driving a white Chevrolet Caprice.

<u>Id.</u> at 14.  The CI also advised Detective Middleton that Defendant was "transporting a large

amount of cocaine" and he was traveling from the Crescent City area.  <u>Id.</u>  He/she informed

Detective Middleton that Defendant had left the area approximately ten to fifteen minutes

ago.  <u>See id.</u> at 15.  Once Detective Middleton concluded the conversation with the CI, he

left his office with his supervisor, Lieutenant Merchant, and started traveling south on

---

[2]      Detective Middleton is employed as a narcotics and vice detective with the Putnam
County Sheriff's Office and has been so employed for about two years.  <u>See</u> Tr. at 13-14, 24.  He
has worked for the Putnam County Sheriff's Office for a total of three and a half years.  <u>See id.</u> at
13.  He previously worked for the United States Army as a military police officer for four years.  <u>See</u>
<u>id.</u> at 14.

[3]      While Defendant testified at the hearing, the sole purpose of his testimony was to
establish that he had a legitimate expectation of privacy in the vehicle searched.  <u>See</u> Tr. at 9-10.
After Defendant testified, the government conceded that he had a legitimate expectation of privacy
and could challenge the search of the vehicle.  <u>See id.</u> at 12.

Highway 17.   See id.   Detective Middleton was not in uniform and his vehicle was unmarked.   See id. at 17, 24-25.

Moments later, Detective Middleton and Lieutenant Merchant arrived at the intersection of Sunset Point Drive and Highway 17 in East Palatka and established stationary surveillance facing south on Highway 17.   See id. at 15-16, 35.   This intersection is about three to four miles from the McDonald's restaurant mentioned by the CI.[4]   See id. at 34.   The officers were at the intersection for almost five minutes when Detective Middleton "observed a green dual-wheel Chevrolet truck traveling north past [him]."   Id. at 16.   As the vehicle passed the officers, Detective Middleton recognized that Defendant was driving the truck and there were no other passengers.[5]   See id.

Upon recognizing Defendant, Detective Middleton and Lieutenant Merchant began to follow him for about two to two and a half miles to further investigate the information provided by the CI.   See id. at 16-17, 36, 43.   While following Defendant, Detective Middleton noticed that Defendant was frequently looking behind him and in his rear view mirror.   See id. at 17, 36-37.   In the opinion of the detective, Defendant was exhibiting "very

---

[4]       While Detective Middleton did not visit the McDonald's restaurant mentioned by the CI on that day, another set of detectives were stationed at the restaurant.   See Tr. at 35.

[5]       Detective Middleton was able to recognize Defendant as the driver because he attended high school and played sports with Defendant.   See Tr. at 16.   They attended high school together from 1994 to 1996.   See id. at 38.   The detective also saw Defendant several times after high school.   See id. at 39.   In addition, the officer had also previously conducted surveillance on the Defendant.   See id. at 19.   Detective Middleton testified that he was able to view the driver clearly despite the light tint on the windows of Defendant's truck because the front window was not tinted and the detective was facing southbound while Defendant was driving northbound.   See id. at 16, 38.   He also stated that it was a sunny day and he could see through the tint on the rear truck's window.   See id. at 38.

nervous behavior." Id. at 37.   During this time, Detective Middleton also asked his dispatcher to run a license plate check on the tag that was displayed on the vehicle. See id. at 17, 49.  The dispatcher told him that the tag belonged to Michael P. Gilligan, but "the vehicle tag had no vehicle year listing on it, no vehicle color, no vehicle style, whether it be a station wagon, truck, [or] car[,] or a vehicle VIN number which is a Vehicle Identification Number." Id. at 17; see also id. at 19, 49, 52.  Based upon this information, the tag did not appear to be assigned to the vehicle to which it was attached; and there was no way to determine which vehicle, if any, was registered to the tag. See id. at 18, 49.  Therefore, Detective Middleton suspected that the truck might be stolen, but had no specific information confirming that it was stolen. See id. at 39-41.

After learning the tag information from the dispatcher, Detective Middleton stopped Defendant at the intersection of Tommy and Houston Avenues.[6]  See id. at 19, 36, 43, 54. Detective Middleton then approached the driver's side of the vehicle and started to explain why he stopped the vehicle.[7]  See id. at 20.  While he was doing so, Lieutenant Merchant, who had approached the passenger's side of the vehicle, alerted Detective Middleton that

---

[6]      These street names might not be accurate.  The spelling is based on Detective Middleton's testimony, because the police report of the incident was not entered into evidence.

[7]      Detective Middleton testified that he stopped the vehicle based on the information received from the dispatcher regarding the tag as well as the information received from the CI.  See Tr. at 49; see also id. at 43.

there was crack cocaine on the front passenger's seat.[8]  See id.  at 20, 49-50.

Consequently, Detective Middleton asked Defendant to step out of the truck and he placed

Defendant under arrest. See id. at 20-21.  Detective Middleton then searched Defendant's

person and found nine grams of marijuana as well as United States currency, a cellular

telephone, and identification. See id. at 21.  At that point, Detective Middleton summoned

a marked patrol car and Defendant was placed in the back of that vehicle.  See id.

Detective Middleton then asked Defendant for the vehicle registration and the detective

located an outdated and incomplete registration in the truck. See id. at 50-51, 56-57.  He

also ran a check on the vehicle identification number to verify whether the vehicle was

stolen. See id. at 40.  After Defendant was arrested, Lieutenant Merchant removed the

newspaper that was partially concealing the crack cocaine and scale. See id. at 55.

Once Defendant was secured in the patrol car, Detective Middleton, along with other

officers, searched the truck and found an electronic scale, crack cocaine in the front seat,

an additional 122 grams of crack cocaine, and 160 grams of powder cocaine. See id. at

21-22.  The additional crack and powder cocaine were found in a men's shaving kit in the

toolbox, which is located in the bed of the truck. See id. at 22. Lieutenant Merchant then

transported the vehicle to the Putnam County Sheriff's Office impound lot, where an

inventory search was conducted. See id. at 22, 49, 51.

---

[8]      The crack cocaine was sitting on an electronic scale and both were partially
concealed by a newspaper. See Tr. at 21-22, 54-55. Detective Middleton also testified that he saw
the crack cocaine in the front passenger's seat once Lieutenant Merchant alerted him to it and after
Defendant was secured in the back of the patrol car. See id. at 20-21, 55.

## II.    Summary of Argument

Defendant contends that the traffic stop and initial seizure were not supported by probable cause or reasonable suspicion.  See Motion to Suppress ¶ 4; Tr. at 60-61. Specifically, he asserts that Detective Middleton "had insufficient suspicion of criminal activity to stop the vehicle" because there was no indication that Defendant was engaged in criminal activity and the detective was only able to corroborate the innocent details from the tip.  Tr. at 60-61; see also Motion to Suppress ¶ 4.  Defendant also alleges that the tip was vague and nonspecific.  See Motion to Suppress ¶ 4.  In addition, he argues that "[t]here was nothing illegal about this vehicle" to warrant the traffic stop because the vehicle was not stolen and the tag was not attached to the wrong vehicle.  Tr. at 61.  Defendant further complains that the traffic stop was pretextual.  See id. at 62; see also Motion to Suppress ¶ 4.  Thus, Defendant concludes that "there [were] no legal grounds to make this stop, to make this seizure, anything that follows therefrom, whether it was in plain view or not, is fruit of the . . . illegal search and seizure."  Tr. at 63; see also id. at 75.  Alternatively, Defendant contends that the crack cocaine, which formed the basis for the searches of his person and vehicle, was not in plain view.  See id. at 75.[9]

---

[9]    In the Motion to Suppress, Defendant also challenges the subsequent search of the vehicle on August 5, 2004.  See Motion to Suppress ¶ 7.  However, at the hearing, the government indicated that it does not intend to use the evidence seized as a result of that search in the prosecution of the current indictment.  See Tr. at 59.  Based on the government's representation, Defendant withdrew the part of the Motion to Suppress challenging the search on August 5, 2004. See id.

In response, the government asserts that there was probable cause for the traffic stop based on a violation of Florida Statutes § 320.261,[10] and there was reasonable suspicion for the stop due to the information provided by the CI, which was corroborated by the detective. See Tr. at 64-65; Opposition at 4. Next, the government contends that there was probable cause for Defendant's arrest based on the crack cocaine in plain view, and the subsequent search of his person was a valid search incident to arrest. See Tr. at 66; Opposition at 5. Finally, the government maintains that the search of Defendant's vehicle including the toolbox was proper because there was probable cause based on the crack cocaine in plain view and the marijuana found on Defendant's person.[11] See Tr. at 66; Opposition at 5.

## III.    Discussion

### A.    Whether the Stop Was Lawful

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Whren v. United States, 517 U.S. 806, 809 (1996). A traffic stop is a seizure under the

---

[10]    Alternatively, the government contends that even if the officer made a mistake of law and this type of tag does not violate Florida Statutes § 320.261, the stop was still justified because the officer relied on his good faith belief that the tag violated the statute. See Tr. at 64, 68-69. However, the Eleventh Circuit has held that "a mistake of law cannot provide reasonable suspicion or probable cause to justify a traffic stop." United States v. Chanthasouxat, 342 F.3d 1271, 1279 (11th Cir. 2003). Therefore, the undersigned need not address this argument any further.

[11]    The government asserts two alternative arguments to validate the search of the entire truck. See Tr. at 66-68; Opposition at 5. However, it is not necessary to address these arguments, especially in light of the fact that Defendant does not independently challenge the search of the vehicle. Defendant only challenges the validity of the stop and whether the crack cocaine was actually in plain view. See Tr. at 75.

Fourth Amendment. See id. at 806. However, the seizure is reasonable when "the police have probable cause to believe that a traffic violation has occurred," Whren, 517 U.S. at 810; United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003), or the officers have reasonable suspicion pursuant to Terry v. Ohio, 392 U.S. 1 (1968), for an investigative detention, United States v. Benitez-Macedo, No. 04-12600, 129 Fed. Appx. 506, 511 (11th Cir. Apr. 19, 2005) (per curiam) (unpublished decision); United States v. Tapia, 912 F.2d 1367, 1370 & n.3 (11th Cir. 1990); United States v. Smith, 799 F.2d 704, 707 (11th Cir. 1986); United States v. Flowers, No. 01-892-CR, 2004 WL 1336611, at *4 (S.D. Fla. Apr. 15, 2004).

When determining whether a traffic stop is a reasonable seizure, the Supreme Court has instructed that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Whren, 517 U.S. at 813. As a result, it is now well established that an officer's subjective motivations are irrelevant when evaluating whether a seizure was reasonable under the Fourth Amendment. See, e.g., Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001) (per curiam); Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004), cert. denied, 125 S. Ct. 507 (2004) (mem.); United States v. Couch, No. 03-172-N, 2004 WL 419903, at **2-3 (M.D. Ala. Feb. 5, 2004) (finding that "even if [the officer] had in mind searching for drugs when he pulled [the defendant's vehicle] over, this is constitutionally irrelevant" if there was probable cause to believe a traffic violation had occurred); see also Devenpeck v. Alford, ___ U.S. ___, 125 S. Ct. 588, 593-94 (2004). Instead, the Court's inquiry is limited to the objective determination of whether there was probable cause to

believe a traffic violation had occurred or whether there was reasonable suspicion for an investigative detention.

In this case, Detective Middleton testified that he stopped Defendant's vehicle because of the suspected tag violation and based on the information provided by the CI. See Tr. at 43, 49.  Defendant argues that the traffic stop was merely a pretext to search for drugs.  See id. at 62.  However, the authority cited herein establishes that the subjective motivations of the officer are irrelevant.  See, e.g., Sullivan,  532 U.S. at 771-72.  In addition, Defendant argues that the evidence of pretext is the fact that the detective never requested to see the vehicle's registration.  See Tr. at 73.  Yet, Detective Middleton testified that only about ten seconds elapsed from the moment he approached the truck until Lieutenant Merchant alerted him to the presence of crack cocaine in the vehicle.  See id. at 50.  Therefore, he had little time to ask Defendant for the registration.  Moreover, once Defendant was arrested and secured in the back of the patrol car, Detective Middleton did ask Defendant for the vehicle's registration.  See id.  As a result, Defendant's argument that the stop should be invalidated because it was pretextual is unavailing.

Accordingly, the Court must now decide whether there was probable cause to believe that a traffic violation had occurred or whether there was reasonable suspicion under Terry to stop Defendant's vehicle.

### 1.      Probable Cause Based on the Alleged Traffic Violation

Defendant contends that Detective Middleton did not have probable cause to believe that he had committed a traffic infraction because the vehicle was not reported as stolen and the information received from the dispatcher only indicated that there was insufficient

information placed in the registration database.  See Tr. at 61-62, 70-73.  He contends that "[t]here was nothing illegal about this vehicle."  Id. at 61.  In particular, Defendant argues that there cannot be a violation of Florida Statutes § 320.261 unless the tag placed on the vehicle was actually registered to another vehicle.  See id. at 61-62, 70-72.

Probable cause is an objective determination.  See Devenpeck, 125 S. Ct. at 594; United States v. Roy, 869 F.2d 1427, 1432 (11th Cir. 1989).  Consequently, there does not have to be probable cause to believe that the suspect committed the offense actually identified by the officer at the time of the seizure.  See Devenpeck, 125 S. Ct. at 594.  Instead, a probable cause showing only requires "a reasonable ground for belief of guilt and that the belief of guilt must be particularized with respect to the person to be searched or seized."  Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotation marks and citations omitted).  As long as there were reasonable grounds to believe that a traffic infraction had occurred, the traffic stop will be deemed valid.  See Chanthasouxat, 342 F.3d at 1277 (recognizing that "'the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one'" (quoting United States v. Cashman, 216 F.3d 582, 587 (7th Cir. 2000))).

While the government bears the burden of proving that there was probable cause for the traffic stop, see United States v. Leal, No. 3:03-CR-31-J-32HTS, 2003 WL 21665126, at *7 (M.D. Fla. Mar. 28, 2003), in this case, it has met its burden.  Detective Middleton's testimony establishes that he had reasonable grounds to believe that the tag attached to Defendant's vehicle violated Florida Statutes § 320.261.  The dispatcher informed him prior to the stop that there was no vehicle information assigned to this tag and

that it appeared that the tag belonged to Michael P. Gilligan.  <u>See</u> Tr. at 17, 19, 49, 52.

Florida Statutes § 320.261 provides:

> Any person who knowingly attaches to any motor vehicle . . . any registration
> license plate, . . . which plate . . . was not issued and assigned or lawfully
> transferred to such vehicle, is guilty of a misdemeanor of the second degree
> . . . .

The plain language of the statute does not require that the tag at issue be assigned to

another vehicle.  <u>See</u> Fla. Stat. § 320.261.  In addition, it does not require that the vehicle

be reported as stolen.  <u>See</u> <u>id.</u>  It only requires that the tag be attached to a vehicle to

which it has not been assigned.  <u>See</u> <u>id.</u>  While Defendant suggests that the vehicle

information was not associated with the tag due an error by the government, <u>see</u> Tr. at 72-

73, he did not put forth any evidence to support this contention.  In addition, Detective

Middleton testified that the registration found in the vehicle at the stop was incomplete and

outdated.  <u>See</u> <u>id.</u> at 56-57.  Therefore, the undersigned concludes that the detective had

probable cause to stop this vehicle.  Alternatively, the Court considers whether there was

reasonable suspicion to conduct an investigative stop in the absence of probable cause.

### 2.      Reasonable Suspicion Based on the Informant's Tip

Defendant asserts that the officers did not have reasonable suspicion to justify the

stop.  <u>See</u> Tr. at 60-61.  He contends that there was insufficient suspicion of criminal

activity to warrant the stop, the CI's tip was vague, and that "[t]he officer had nothing to

corroborate the information that he had received."  <u>Id.</u>; <u>see also</u> Motion to Suppress ¶ 4.

"[E]ven in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity." <u>Tapia</u>, 912 F.2d at 1370.  This standard is equally applicable to vehicle stops. <u>See, e.g.</u>, <u>id.</u> at 1370 n.3.  Reasonable suspicion, however, "requires that the officer 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" <u>United States v. Griffin</u>, 109 F.3d 706, 708 (11th Cir. 1997) (per curiam) (quoting <u>Tapia</u>, 912 F.2d at 1370); <u>see also</u> <u>United States v. Boyce</u>, 351 F.3d 1102, 1107 (11th Cir. 2003).

The officer must have "more than an inchoate hunch, and the [F]ourth [A]mendment accordingly requires that police articulate some minimal, objective justification for an investigatory stop." <u>Boyce</u>, 351 F.3d at 1107 (internal quotation marks omitted) (alterations in original); <u>see also</u> <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123-24 (2000) (recognizing that the Fourth Amendment requires "a minimum level of objective justification for making the stop").  This determination "must be based on commonsense judgments and inferences about human behavior," <u>Wardlow</u>, 528 U.S. at 125, and the Court must consider the totality of circumstances in determining whether there was reasonable suspicion, <u>see</u> <u>United States v. Sokolow</u>, 490 U.S. 1, 8 (1989); <u>see also</u> <u>United States v. Heard</u>, 367 F.3d 1275, 1278 (11th Cir. 2004), <u>cert. denied</u>, 125 S. Ct. 235 (2004) (mem.).  In addition, the officer

must have reasonable suspicion before effectuating the stop.  See United States v. Hammack, 604 F.2d 437, 441 (5th Cir. 1979);[12] see also Florida v. J.L., 529 U.S. 266, 271 (2000).  The officer cannot use information learned after the stop to establish reasonable suspicion.  See J.L., 529 U.S. at 271; Hammack, 604 F.2d at 441.

On the other hand, the officer does not have to observe the suspicious conduct personally in order to effectuate a stop.  See United States v. Aldridge, 719 F.2d 368, 371 (11th Cir. 1983); Hammack, 604 F.2d at 439.  A tip from a reliable informant might be sufficient to establish reasonable suspicion. See Adams v. Williams, 407 U.S. at 143, 147 (1972) (suggesting that when the officer has received information from a credible source, he or she might be permitted to conduct an investigative stop); United States v. One (1) 1984 #1 Boat Mfg. Lobster Vessel Known as M/V Sea Power Official Documentation No. 675336, 617 F. Supp. 672, 677 (S.D. Fla. 1985); cf. J.L., 529 U.S. at 269.  Even if such a tip alone were insufficient to create reasonable suspicion to conduct a traffic stop, several courts have found that a tip from a known source is further bolstered and provides a sufficient basis for an investigative stop when the officer corroborates only the innocent details of the tip prior to effectuating the stop.  See United States v. Roper, 702 F.2d 984, 989 (11th Cir. 1983); United States v. Kent, 691 F.2d 1376, 1380 (11th Cir. 1982).

While a tip from a known informant is more reliable than an anonymous source, see White v. United States, 454 U.S. 924, 925 (1981) (White, J., dissenting); Adams, 407 U.S.

--------------------------------------------------

[12]     This case and all Fifth Circuit cases decided prior to September 30, 1981, are binding precedent pursuant to Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

at 147; <u>Heard</u>, 367 F.3d at 1279, a tip from an anonymous source may be sufficient to create "reasonable suspicion . . . as long as the information provided contains 'sufficient indicia of reliability to justify the investigatory stop,'" <u>Heard</u>, 367 F.3d at 1278.  An anonymous tip may be considered reliable if the officer has corroborated some of the details in the tip.  <u>See</u> <u>J.L.</u>, 529 U.S. at 271.  Corroboration of innocent details can be sufficient when considered along with the tip to establish reasonable suspicion.  <u>See</u> <u>United States v. Gibson</u>, 64 F.3d 617, 623 (11th Cir. 1995); <u>see also</u> <u>Alabama v. White</u>, 496 U.S. 325, 329-30 (1990); <u>cf.</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 243 n.13 (1983) (recognizing that the corroboration of mere innocent details in an anonymous tip may be sufficient to establish probable cause).

A tip will be considered more reliable when it predicts future behavior and significant aspects of those predictions can be corroborated.  <u>See</u> <u>J.L.</u>, 529 U.S. at 271; <u>Alabama</u>, 496 U.S. at 332; <u>Gates</u>, 462 U.S. at 246; <u>Gibson</u>, 64 F.3d at 620.  As reasonable suspicion is a lesser standard than probable cause, an officer may rely on a tip that is not as detailed and corroboration that is not as complete as would be required to establish probable cause. <u>See</u> <u>Alabama</u>, 496 U.S. at 329-31 (finding that "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, [and] . . . reasonable suspicion can arise from information that is less reliable than that required to show probable cause").

In this case, Defendant's arguments that Detective Middleton did not have reasonable suspicion to conduct the investigative stop are unavailing.  First, he contends that the tip was insufficient to establish reasonable suspicion for the investigative stop

because Detective Middleton failed to corroborate any details other than innocent activity. See Tr. at 61, 74.  However, as the foregoing authority states, merely because the officer failed to observe any criminal activity does not evidence a lack of reasonable suspicion. See, e.g., Alabama, 496 U.S. at 329; Aldridge, 719 F.2d at 371.  Likewise, the fact that an officer is only able to corroborate the innocent details of a tip does not detract from a finding of reasonable suspicion or probable cause.  See Gates, 462 U.S. at 243 n.13; Aldridge, 719 F.2d at 371; Roper, 702 F.2d at 989.   Next, he asserts that Detective Middleton prematurely conducted the stop and suggests that he should have waited and verified the CI's statement regarding the final destination of the vehicle.  See Tr. at 63.  But, an officer is not required to corroborate every detail included in a tip from a confidential source before conducting an investigative stop.  See, e.g., Alabama, 496 U.S. at 331.  Indeed, the United States Supreme Court has instructed that only significant aspects of the tip need to be corroborated and less corroboration is required to establish reasonable suspicion.  See id. at 330-31; see also Gates, 462 U.S. at 246.  Moreover, the Supreme Court has concluded that a seizure, based on a tip, was reasonable even though the officer stopped the suspect before he or she reached his or her final destination.  See Alabama, 496 U.S. at  331. Accordingly, the undersigned is not persuaded by Defendant's arguments.

Furthermore, the undersigned finds, upon review of the circumstances presented in this case, that there was reasonable suspicion to stop Defendant's vehicle.  First, unlike the cases cited by Plaintiff, see Motion to Suppress ¶ 4; see also Felton v. State, 753 So. 2d 640, 642 (Fla. Dist. Ct. App. 4th 2000); Strong v. State, 495 So. 2d 191, 192 (Fla. Dist. Ct. App. 2d 1986), the tip in this case was detailed.  The CI told Detective Middleton:

> Lovarnso Walker was traveling to the Palatka area [from the Crescent City area] in a green dual-wheel truck, . . . there was no one else in the vehicle with him[,] and that he was planning to travel to the McDonald's located in Palatka which is located off Reed . . . Street, also known as Highway 17 to meet with another black male driving a white Chevrolet Caprice. . . .   Mr. Walker was going to be transporting a large amount of cocaine.

Tr. at 14.   He/she informed Detective Middleton that Mr. Walker had departed approximately ten to fifteen minutes earlier.  See id. at 15.  The tip contained many details and specifically named the individual who would be driving, the kind of vehicle, when he would be traveling, and to what location.  See id. at 14.  In addition, as Detective Middleton knew Lovarnso Walker, there was little chance of detaining the wrong person.  See id. at 16, 38-39.  The Eleventh Circuit in Kent recognized that a detailed tip, which indicates the location and time, is more reliable.  See 691 F.2d at 1380.

Second, the tip in this case predicted future action, and as discussed infra, Detective Middleton was able to corroborate significant aspects of those details, which is an important factor in finding that the tip was reliable.  See id.; see also Alabama, 496 U.S. at 332; Gates, 462 U.S. at 245-46.  Third, unlike the cases cited by Defendant, see Motion to Suppress ¶ 4; Felton, 753 So. 2d at 642; Fuller v. State, 658 So. 2d 1202, 1202 (Fla. Dist. Ct. App. 2d 1995); Strong, 495 So. 2d at 192; In re G.A.R., III, 387 So. 2d 404, 408 (Fla. Dist. Ct. App. 4th 1980), Detective Middleton, in this case, knew the CI and received reliable information from him/her in the past.  See Tr. at 15.  He testified that between early 2004 and July 30, 2004, he had spoken to the CI regarding eight to ten cases.  See id. at 26-27, 33.  Detective Middleton indicated that the CI's information had always been correct and had led to arrests and the issuance of search warrants.  See id. at 27.  In addition, he

stated that the CI's information had always produced narcotics and other results consistent with the information provided.  See id. at 30-31, 33.  Defendant failed to adduce any testimony that indicates the CI was unreliable.  Therefore, as the CI was known to Detective Middleton and had previously provided consistent and reliable information, the CI's tip alone would probably be sufficient to establish reasonable suspicion.  See, e.g., One (1) 1984 #1 Boat, 617 F. Supp. at 677.

Nonetheless, in this case, the detective was also able to corroborate significant aspects of the tip.  Immediately after receiving the tip, Detective Middleton along with Lieutenant Merchant traveled to the intersection of Sunset Point Drive and Highway 17 in East Palatka to set up surveillance.  See Tr. at 15-16, 35.  The CI stated that Defendant would be traveling from the Crescent City area to a McDonald's restaurant on Highway 17 in Palatka.  See id. at 14.  Detective Middleton set up surveillance along the most direct route to that McDonald's restaurant.  See id. at 15, 34-35.  Less than five minutes after setting up surveillance, Detective Middleton saw a green, dual-wheeled truck traveling north on Highway 17 toward Palatka.  See id. at 16.  Thus, Detective Middleton was able to confirm the vehicle and that it was traveling to Palatka as stated in the tip.  In addition, he was able to confirm the timeframe provided by the caller because the truck appeared less than five minutes after he arrived at the intersection.  See Alabama, 496 U.S. at 331.  Once the truck passed Detective Middleton, he was able to confirm that there was only one individual in the truck and that the individual driving was Lovarnso Walker, as the CI stated. See Tr. at 14, 16.  Moreover, Detective Middleton testified that Defendant was traveling the most direct route to the McDonald's restaurant.  See id. at 15, 34-35.  Therefore, he was

able to significantly corroborate the likely destination identified by the CI.  See Alabama, 496 U.S. at 331.  The only information that Detective Middleton was not able to corroborate prior to the stop was that there was a large amount of cocaine concealed in the vehicle and that a black male in a white Chevrolet Caprice was waiting at the restaurant.

Finally, there was reasonable suspicion for this stop because Detective Middleton was able to corroborate just as many details, if not more, than the officers in Alabama and Gates; cases in which the Supreme Court found that the corroboration was sufficient to justify the stop (in Alabama) or the search (in Gates).  See Alabama, 496 U.S. at 331-32 (opining that "[w]hen significant aspects of the caller's predictions were verified, there was reason to believe not only that the [anonymous] caller was honest but also that he was well informed, at least well enough to justify the stop"); Gates, 462 U.S. at 243-46 (finding that there was probable cause for the search based, in part, on the anonymous letter because the officers had corroborated major parts of the letter).  Indeed, this case is nearly identical to the situation presented in Draper v. United States, 358 U.S. 307, 309-10, 313 (1959), which was relied on by the Supreme Court in Gates, 462 U.S. at 242-45.  In Draper, the Supreme Court found that the officers had probable cause to arrest the defendant based on a tip from a reliable informant and the fact that the officers had corroborated every detail provided by the source except whether the defendant possessed narcotics.  See 358 U.S. at 313.  Based upon the foregoing, the undersigned concludes that, at a minimum, there was reasonable suspicion to conduct an investigative stop of the vehicle.

**B.      Whether the Searches Were Proper**

Having found that the traffic stop was lawful, the Court next considers whether the searches of Defendant's person and vehicle were reasonable.  Defendant's only argument is that the crack cocaine was not in plain view of Detective Middleton.  See Tr. at 75.  He contends that the newspaper was covering the contraband and "the officer [merely] testified that what he saw was the black plastic of the scale and the plastic baggie."  Id.

The only testimony on this issue is from Detective Middleton.  He stated that the newspaper was only partially concealing the crack cocaine and that Lieutenant Merchant signaled to him that there was crack cocaine in plain view.  See id. at 20, 22, 48, 54-55.  There is no evidence to contradict this testimony.  The fact that Detective Middleton may not have been able to see the crack cocaine from his position does not vitiate the finding of probable cause.  See id. at 48; United States v. Allison, 953 F.2d 1346, 1350 (11th Cir. 1992) (stating that "[w]here there is at least minimal communication between different officers, the collective knowledge of the officers determines probable cause").  Detective Middleton's uncontradicted testimony establishes that he and Lieutenant Merchant were communicating during the traffic stop, that Lieutenant Merchant saw the crack cocaine in plain view, and that Lieutenant Merchant notified Detective Middleton of this fact.  See Tr. at 20, 22.  Therefore, the Court finds that the crack cocaine was in plain view and there was probable cause for Defendant's arrest.  See Draper, 369 F.3d at 1276.  As the undersigned finds that Defendant's arrest was lawful, the search of his person was a proper search incident to arrest.  See Thornton v. United States, 541 U.S. 615, 124 S. Ct. 2127, 2130 (2004).

Finally, the Court considers whether there was probable cause to search the vehicle. Defendant does not independently challenge the search of the vehicle. <u>See</u> Tr. at 75. Therefore, the undersigned need not devote a significant discussion to this issue. The undersigned finds that the officers had probable cause to search the vehicle based on the following facts: (1) the crack cocaine in plain view; (2) the corroborated tip from the reliable informant; and (3) the marijuana found on Defendant's person. <u>See</u> <u>United States v. Ross</u>, 456 U.S. 798, 817 n.22 (1982); <u>United States v. Talley</u>, 108 F.3d 277, 281-82 (11th Cir. 1997) (per curiam); <u>United States v. Freire</u>, 710 F.2d 1515, 1523 (11th Cir. 1983); <u>United States v. Lara</u>, 517 F.2d 209, 211 (5th Cir. 1975); <u>United States v. Delyea</u>, 703 F. Supp. 83, 84 n.6 (M.D. Ga. 1989); <u>see also</u> <u>United States v. Burns</u>, 298 F.3d 523, 542 (6th Cir. 2002). Once the officers had probable cause to search the vehicle, they could search the entire vehicle including the toolbox. <u>See</u> <u>California v. Acevedo</u>, 500 U.S. 565, 570 (1991); <u>Ross</u>, 456 U.S. at 825. Therefore, the search of the vehicle was proper.

## RECOMMENDATION

In light of the foregoing, it is hereby **RECOMMENDED**:

Defendant's Amended First Motion to Suppress Results of Illegal Seizure and Search on July 30, 2004 (Dkt. No. 21) should be **DENIED**.

**ENTERED** at Jacksonville, Florida, this 29th day of July, 2005.

**MARCIA MORALES HOWARD**
United States Magistrate Judge

-20-

lc1

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

All Counsel of Record
Pro Se Parties